# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| Melissa Passenti,<br><br>    Plaintiff,<br><br>v.<br><br>Veyo, LLC, and LJ Leasing, Inc.,<br><br>    Defendants. | Civil No. 21-CV-01350 (SRU)<br><br><br><br>November 29, 2022 |

## RULING and ORDER

Pending are the parties' Motions to Compel, Motions to Extend and/or Modify the current scheduling order and Motion for Protective Order.[1]  (Doc. ## 56, 57, 61, 64, 78.)  On October 4, 2022, the parties were ordered to an in-person meet and confer conference to resolve and/or narrow the areas of disagreement and to file a Joint Status Report identifying the remaining areas at issue. (Doc. # 76.)  The parties filed a Joint Status Report on October 28, 2022.  The motions are ripe for decision.  (Doc. # 83.)

## I.  BACKGROUND

The Complaint alleges, in relevant part, as follows. Plaintiff began employment with LJ Leasing, Inc.[2] on or about November 24, 2017.  (Compl. Doc. # 1, at ¶ 8.)  At the end of September 2019, she met with a human resources representative and disclosed both her pregnancy and pregnancy-related complications, hyperemesis gravidarum.  (*Id.,* at ¶ 27.)  During flare-ups of her

---

[1] These motions were referred to the undersigned by then-District Judge Sarah Merriam for discovery and case management purposes.  (Doc. # 68.)  Judge Merriam found that the case required "hands-on management and intensive intervention."  (Doc. # 67.)  This case was transferred to Judge Stefan R. Underhill on October 5, 2022.  (Doc. # 77.)

[2] Defendant LJ Leasing Co. Inc. states that it has been incorrectly identified in the Complaint as "LJ Leasing, Inc."  (Doc. # 56, n.1.)

pregnancy-related disability, Ms. Passenti utilized FMLA intermittent leave periodically.  (*Id.,* at ¶ 39.)  On or about October 14, 2019, Plaintiff was placed on a performance improvement plan ("PIP").  (*Id.,* at ¶ 42.)  On or about March 1, 2020, Plaintiff requested FMLA leave, which was approved.  (*Id.,* at ¶¶ 78-84.)  She gave birth on March 23, 2020.  (*Id.,* at ¶ 85.)  On or around April 8, 2020, Plaintiff was informed that she was laid off due to the coronavirus pandemic.  (*Id.,* at ¶ 88.)

Plaintiff asserts the following claims against Defendants Veyo, LLC and LJ Leasing, Inc. (collectively "Defendants"): interference and retaliation in violation of the Family and Medical Leave Act, 29 U.S.C. § 2615 ("FMLA"); sex and pregnancy discrimination and retaliation in violation of the Connecticut Fair Employment Practices Act ("CFEPA") Conn. Gen. Stat. § 46a-60 and Title VII of the Civil Rights Acts of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"); failure to provide reasonable pregnancy-related accommodations in violation of CFEPA; failure to accommodate and disability discrimination and retaliation in violation of CFEPA, and the Americans with Disabilities Act, 42 U.S.C. §12101, *et seq.* ("ADA").

## II.   DEFENDANTS' MOTION TO COMPEL

Defendants move to compel responses to their First Set of Interrogatories and Requests for Production dated March 17, 2022, pursuant to Fed. R. Civ. P. 37(a), D. Conn. L. Civ. R. 37, and this Court's Orders of June 28, 2022 and July 13, 2022.  (Doc. ## 51, 54.)

Specifically, Defendants seek to compel complete responses to Interrogatories Nos. 5, 10, 14, 19, 20, 21, 22, 23, 24, 25 and Requests for Production Nos. 3, 7, 20, 21. (Doc. # 83, at 7.)  For the reasons that follow, Defendants' Motion to Compel is granted in part and denied in part.  (Doc. # 56.)

### A.  *Claims for Damages*

Defendants raise two issues concerning discovery on Plaintiff's damages claims.

### 1.   Damages-Generally

Defendants seek documents and information related to Plaintiff's damages claims (Interrogatory Nos. 5, 14 and Request for Production No. 7) (Doc. # 56-1, § A, at 5-7).

Plaintiff seeks the typical items of damages in employment cases, lost compensation and benefits, emotional distress, compensatory damages, punitive damages, liquidated damages, reasonable attorney's fees and interest and costs.   (Compl. §§ A-L, at 33; *see also* Plaintiff's Response to Interrogatory No. 5, Doc. # 56-3, at 8-9; Initial Disclosures ¶ C.) Defendants argue that while Plaintiff provided a calculation of her total lost wages and benefits, she has "not provided the requested information for *any* of the remaining damages categories."  (Doc. #56-1, at 6-7 (emphasis in original).)

It is true that as part of initial disclosures a party *must* provide to the other parties "a computation of each category of damages claimed by the disclosing party-who must also make available for inspection and copying as under Rule 34 documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered."  (*Id.* (citing Fed. R. Civ. P. 26(a)(1)(A)(iii)).)  Moreover, the "Initial Discovery Protocols for Employment Cases Alleging Adverse Action" posted on Judge Underhill's webpage, require a plaintiff to "describe the categories of damage the plaintiff claims"; "all communications concerning the factual allegations or claims at issue in this lawsuit between the plaintiff and defendant"; and "any other document(s) upon which the plaintiff relies to support the plaintiff's claims."   *See* https://ctd.uscourts.gov/content/stefan-r-underhill (last visited Nov. 21, 2022).

Except for discovery on attorney's fees, which is addressed in the next section, Defendants' Motion to Compel is granted as to this issue.  Accordingly, Plaintiff is directed to provide responses

to Interrogatory Nos. 5, 14 and Request for Production No. 7.[3]  Plaintiff will provide revised responses **within fourteen (14) days of the filing of the Court's order.**  *See* D. Conn. L. Civ. R. 37(d).

### 2. Damages-Attorney's Fees

Defendants seek documents and responses to Interrogatories Nos. 5, 14 and RFP No. 7, regarding attorney's fees, including production of documents on which each computation is based. (Doc. # 56-1, §A, at 7-9).

Plaintiff has not produced documents or information responsive to these requests claiming that "documents related to attorneys' fees and expenses constitute . . . protected information under the [attorney-client] privilege."  (Doc. # 60-1, at 23.)   She further argues that there is "no standing confidentiality order" in place to ensure that information related to fees, attorney engagement, and other fee-related information is kept private.  (*Id.*)

Plaintiff's bases for not producing responsive documents are unavailing.  First, our Court of Appeals "has consistently held that absent special circumstances, client identity and fee information are not privileged," as "their disclosure does not inhibit the ordinary communication necessary for an attorney to act effectively, justly, and expeditiously."  *In re Grand Jury Subpoena Served Upon Doe,* 781 F.2d 238, 247–48 (2d Cir.1986) (*en banc*); *see Bria,* 2002 WL 663862, at *5 (same) (collecting cases).  Put another way, "where the communication is not confidential and is not necessary to obtain informed legal advice for the client, no privilege exists."  *Id.*, at 247; *In re Kelley,* 01–11686, 2003 WL 24144575, at *6 (Bankr. D. Vt. Apr. 24, 2003) ("Administrative documents including billing records, expense reports, correspondence, bills, ledgers, statements,

---

[3]      The parties are reminded that Rule 37(c) of the Federal Rules of Civil Procedure states that a party that fails to provide information required by Rule 26(a) or (e) "is not allowed to use that information . . . unless the failure was substantially justified or is harmless."

time records, diary entries, time sheets, billing reports and telephone logs fall under the attorney-client privilege *only if* they reveal litigation strategy or other confidential information.") (collecting cases; emphasis in original).

In this case, Plaintiff did not submit a privilege log pursuant to Fed. R. Civ. P. 26(b), D. Conn. L. Civ. P 26(e), or provide a copy of her billing records and retainer agreement to the Court for *in camera review* with proposed redactions.  Indeed, she has made no showing of a special or compelling circumstance to carry her burden that all or part of these requested documents should be redacted or withheld.  The Court notes that "nothing precluded Plaintiff's counsel from redacting or editing time entries that they considered privileged prior to submitting time records." *Strauch v. Computer Sci. Corp.,* No. 3:14-CV-956 (JBA), 2020 WL 1812715, at *3 (D. Conn. Apr. 9, 2020).  Instead, Plaintiff provided nothing.

Second, Plaintiff's objection to production of these documents due to the lack of a confidentiality order is unfounded.  (Doc. # 60-1, at 23-24.)  A Standing Protective Order entered in this case on October 12, 2021, which addresses the production of "highly sensitive" information such as attorney's fees records.  (Doc. # 62 (citing Doc. # 6).)

Notwithstanding, "whether to allow discovery of information regarding fees and expenses of opposing counsel is generally considered to be within the discretion of the trial court."  *Okyere v. Palisades Collection, LLC*, 300 F.R.D. 149, 150 (S.D.N.Y. 2014). Given that the information sought has no bearing on liability, the Court finds that the request is premature. Defendants' Motion to Compel Interrogatories No. 5 and 14 and RFP 7 as to attorney's fees is denied without prejudice to refiling in the event Plaintiff prevails at trial and files an application for attorney's fees. *See Abdel-Samed v. ING Life Ins. & Annuity Co.*, No. 3:12CV925 RNC, 2013 WL 1962673,

at *1 (D. Conn. May 10, 2013) (denying without prejudice production of fee agreement during pretrial phase).

### 3.   Evidence to Support/Refute the Allegations in the Complaint

Next, Defendants seek responses to Interrogatories Nos. 19-25 and documents responsive to RFP No. 21, regarding the factual basis/evidence to support the specific allegations in the Complaint.  (Doc. # 56-1, § B, at 9-12; *see* Plaintiff's May 16, 2022 Responses to Defendant's First Set of Discovery Requests, Doc. # 74, at 4-46).  They argue that these Interrogatories seek specific information regarding the allegations set forth in the Complaint and that Plaintiff's responses were deficient.

The function of interrogatories is to expeditiously narrow the scope of litigation, reduce the element of surprise, serve as admissions for trial, obtain factual detail and identify documents, and avoid unnecessary discovery and minimize expense and delay.  7 Moore's Federal Practice §§ 33.03; 33.05.  Each interrogatory, whether seeking facts or contentions, is to be answered "separately and fully."  Fed. R. Civ. P. 33(b)(3).  Interrogatories may relate to any matter that can be inquired into under Rule 26(b)(1).  Fed. R. Civ. P. 33(a)(2); 7 Moore's Federal Practice § 33.02.

### a.   Reference to Outside Materials

Defendants first argue that it was improper for the responses to Interrogatory Nos. 19 and 20 to direct the Defendants to see "all allegations set forth in the Complaint" and not provide a response to the specific information requested."  (Doc. # 56-1, at 10-11.)  Similarly, they argue that it was improper to provide an answer to Interrogatory Nos. 21-25 which "incorporates all allegations set forth in the Complaint and in response to Interrogatory [Nos.] 20" and 22, without specifically answering the questions.  *Id.*  Plaintiff does not respond to this argument.  Rather, she states that she has sufficiently answered Defendants' contention interrogatories and the most

efficient and appropriate manner of getting this this information is by deposing the Plaintiff.  (Doc. # 60-1, at 11-16.)   The Court disagrees. "Plaintiff cannot avoid answering interrogatories by referring the defendant to the complaint, no matter how detailed." *Stabilus, A Div. of Fichtel & Sachs Indus., Inc. v. Haynsworth, Baldwin, Johnson & Greaves, P.A.,* 144 F.R.D. 258, 263–64 (E.D. Pa. 1992).

Because Rule 33(b)(3) requires a party to answer each interrogatory 'separately and fully,' "it is technically improper and unresponsive for an answer to an interrogatory to refer to outside material, such as pleadings, depositions, or other interrogatories." *Equal Rights Ctr. v. Post Props., Inc.,* 246 F.R.D. 29, 35 (D.D.C. 2007), (citing 7-33 Moore's Federal Practice-Civil § 33.103).   "The responding party must provide the best answer they can based upon current information in their possession." *Trueman*, 2010 WL 681341, at *3 (citing Fed. R. Civ. P. 33(b)(3) ("Each interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath.")). "Answers to interrogatories that incorporate other documents by reference are strongly disfavored.   Reference to depositions, other answers to the interrogatories, other document production, the complaint itself, or any other documents are improper and thus unresponsive." *Trueman v. New York State Canal Corp,* No. 1:09-cv-049 (LEK/RFT), 2010 WL 681341, at *3 (N.D.N.Y. Feb. 24, 2010); *Rivera v. Affineco, LLC*, No. 16 CV 1666 (JBA), 2018 WL 1046317, at *9 (D. Conn. Feb. 26, 2018).

Defendants' Motion to Compel is granted as to this claim.   Plaintiff is ordered to supplement her responses to Interrogatory Nos. 19-25 **within fourteen (14) days of the filing of the Court's order.** *See* D. Conn. L. Civ. R. 37(d).

### b.   Alleged Failure to Provide Specific Information

Defendants further argue that Plaintiff fails to: (1) indicate in her responses whether the list of events she provided is exhaustive; (2) provide the manner in which she took protected activity;

(3) state whether there were witnesses to her protected activity; (4) state the responses from Defendants to her protected activity; and (5) provide a list of each and every alleged adverse action that Defendants imposed on her for engaging in that activity.  (Doc. # 56-1, at 11.)

Plaintiff argues that Interrogatory Nos. 19-25 "amount to contention interrogatories which improperly seek all factual information as a basis to claims." (Doc. # 60-1, at 4-7.)  The Court disagrees.  "Because an inquiring party is entitled to know his adversary's theory of the case, Rule 33 which permits contention interrogatories can be mixed questions of law and fact."  *Trueman,* 2010 WL 681341, at *3.  "Defendants can properly ask for an answer that may involve 'an opinion or contention which relates to fact or the application of the law to fact,' with the hope it would lead to evidence or narrow the issues."  *Id.*, at *3 (citing Fed. R. Civ. P. 33(c)).

Here, Plaintiff provides answers that not only refer to the Complaint but also contain boilerplate narratives contained in the Complaint and other interrogatory responses, which fail to set forth specific, responsive information.  These responses do not comply with Rule 33(b)(3), which requires that "[e]ach interrogatory shall be answered separately and fully in writing under oath."[4]

Defendants' Motion to Compel is granted as to this claim.  Accordingly, Plaintiff is ordered to provide responsive, specific, and complete responses to Interrogatories Nos. 19-25, as required by Rule 33 **within fourteen (14) days of the filing of the Court's order.**  *See* D. Conn. L. Civ. R. 37(d).

### 4.   Medical Records and Signed Authorizations

Defendants seek authorizations (RFP No. 3) to request medical and mental health treatment records from the entities listed in response to Interrogatories Nos. 17, 18 and authorization(s)

related to Plaintiff's employers and/or unemployment compensation since her employment with LJ Leasing in response to Interrogatory No. 6.  (Doc. # 56-1, § C, at 13-15.)

After initially agreeing to provide the authorizations at a later date, Plaintiff revised her response on July 27, 2022, informing Defendants for the first time that the authorizations would not be forthcoming.  (Doc. # 62, at 7.)  Defendants point out that despite the request for 7 years of records, Plaintiff has produced 61 pages of medical records dated between 2019-2021 and has not represented that these are all of her medical records."  (*Id.*, at 6.)  Moreover, they represent that "Plaintiff *has not produced any records related to her mental health providers and counseling sessions*, which are directly relevant to her claims for emotional distress damages."  (*Id.,* at 7.)  Plaintiff has not objected to providing medical information covering the period of time requested by Defendants.

Plaintiff responds that signed medical authorizations are "unnecessary and not appropriate" as these records have been requested from each identified provider for the period of 2015 to the present.  (Doc. # 60-1.)  She has not provided a valid reason for withholding signed authorizations for medical and mental health treatment records and unemployment compensation records. Defendants are entitled to seek those documents directly from the source. *Weber v. Fujifilm Med. Sys. U.S.A., Inc.,* No. 3:10-cv-401(JBA), 2011 WL 674026, at *1 (D. Conn. Feb. 17, 2011) ("Defendants can obtain Plaintiff's medical records only by Plaintiff granting his medical providers permission to disclose records or by the subpoena and deposition process. Courts recognize that the authorization process is markedly more efficient.").

As to Interrogatory No. 6 requesting information regarding post-termination employment, Plaintiff's objections are overruled, as the information is relevant to Plaintiff's claim for damages. However, the request for an authorization to seek copies of employment/independent contractor

records directly from the third parties is denied. While it appears no such information exists, the information sought can be produced by Plaintiff to Defendant without the need to involve third parties, which involvement could potentially interfere with Plaintiff's employment or ability to make a living.[5]

Defendants' Motion to Compel is granted in part and denied in part as to this category of discovery. Accordingly, Plaintiff is ordered to respond to Interrogatory No. 6 and provide signed authorizations in ink in response to Interrogatories No. 17 and 18 and Request for Production No. 3 as it relates to medical records **within fourteen (14) days of the filing of the Court's order.** *See* D. Conn. L. Civ. R. 37(d).

### 5. Request for Revised Responses to Interrogatory No. 10 and Request for Production No. 20

#### a. Interrogatory No. 10

Defendants seek revised responses to Interrogatory No. 10 and Request for Production No. 20. (Doc. # 56-1, §D, at 17-18.) Interrogatory No. 10 seeks information related to any disclosed expert witness that Plaintiff intends to call at trial. Plaintiff originally responded on May 17, 2022, that she had no information responsive to this request but that she would supplement it "as appropriate." (Doc. # 74, at 12-13.) On July 1, 2022, Plaintiff served Defendants' counsel expert disclosures for two experts she intends to call at trial. (Doc. # 56-1, at 17.)

Plaintiff contends that she has "adequately answered" Interrogatory No. 10" by providing expert disclosures on July 1, 2022. (Doc. # 60-1, at 20.) The Court agrees. Plaintiff's obligations regarding expert disclosures are governed by Fed. R. Civ. P. 26(a)(2) and that the additional information sought by Defendants, such as "publications authored by the witness within the

---

[5]     Plaintiff shall provide Defendants with a signed authorization to allow Defendants to obtain information relating to unemployment compensation received by Plaintiff.

preceding ten (10) years" rather than the four years required by the Rules is not relevant, at least not on the record before the Court.

Defendants' Motion to Compel is denied as to this issue.

### b.  Request for Production No. 20

Request for Production No. 20 seeks "all documents concerning any communication between you and any individuals or entities regarding the subject matter of the complaint and/or any facts alleged therein." (Doc. # 74, at 39.)

Plaintiff's original response to Request for Production No. 20 stated she had "no further documents responsive to this request." *Id.* During a meet and confer Plaintiff agreed to revise her response to state which documents are responsive to this request. (Doc. # 56-1, at 18.) However, her supplemental responses dated July 27, 2022, did not provide a revised answer. (Doc. # 60-2, at 94.) She responds that she provided a supplemental response clarifying that "other than documents produced in MP000075-MP0000079 and MP000094-MP000100, the Plaintiff has no further documents responsive to this request." (Doc. # 60-1, at 20-21.) She contends that Defendants' Motion to Compel a response is now moot and no further response is warranted.

To the extent any additional responsive documents exist that have not been produced, Plaintiff shall produce them  to Defendants **within fourteen (14) days of the filing of the Court's order.** Otherwise, Plaintiff shall confirm to Defendants in writing that other than the documents already produced and identified, no other responsive documents exist. *See* D. Conn. L. Civ. R. 37(d).

### c.  Request for Production No. 21

On July 27, 2022, Plaintiff provided a supplemental response to Defendant's Request for Production No. 21, stating that "[f]ollowing a reasonable search and subject to objections, the

Plaintiff will supplement this request with documents responsive to this request once they become available." (Doc. # 60-2, at 114.) However, Plaintiff stated in her opposition to Defendants' Motion to Compel that she "clearly already answered that no documents are currently within her possession but will be produced if any such responsive documents become available." (Doc. # 60-1, at 16.) To the extent any exist that have been not been produced, Plaintiff will produce documents responsive to Request for Production No. 21 **within fourteen (14) days of the filing of the Court's order.** *See* D. Conn. L. Civ. R. 37(d).

### 6. Request to Clarify Responses

Defendants seek an order directing Plaintiff to clarify her responses to the interrogatories and requests for production. Here, Plaintiff filed objections to 24 of 25 interrogatories and all 31 of Defendants' requests for production. Despite these objections, she provided responses to all of Defendants' discovery requests. Defendants represent that during a meet and confer, counsel for Plaintiff stated that "no documents were being withheld by Plaintiff other than those pertaining to attorney's fees." (Doc. 56-1, at 18.) Defendants state that they "are unclear as to why Plaintiff maintains her objections despite fully complying with Defendants' requests." (*Id*.)

Rule 34(b)(2)(C) requires that "[a]n objection must state whether any responsive materials are being withheld on the basis of that objection." Fed. R. Civ. P. 34(b)(2)(C). "This requirement is intended to avoid confusion when a producing party states objections and still produces information, leaving the requesting party uncertain whether any relevant and responsive information has been withheld on the basis of the objections." 7 Moore's Federal Practice §34.13[2][b] (3d ed. 2021); *see Fischer v. Forrest*, No. 14CIV1304 (PAE)(AJP), 2017 WL 773694, at *3 (S.D.N.Y. Feb. 28, 2017) ("[I]ncorporating all of the General Objections into each response violates Rule 34(b)(2)(B)'s specificity requirement as well as Rule 34(b)(2)(C)'s

requirement to indicate whether any responsive materials are withheld on the basis of an objection.").[6]

Defendants correctly assert that Plaintiff's original and supplemental responses "do not meet this requirement" and ask the Court to instruct Plaintiff "to clarify her responses to state whether any documents or information are being withheld on the grounds of an objection . . . ." (Doc. # 56-1, at 19.)   Plaintiff systematically asserts that each interrogatory or request for production is "overly broad, vague and unduly burdensome", qualifies her response "to the extent it seeks information and documents protected from disclosure by spousal privilege, attorney-client privilege, attorney work product and/or any other applicable privilege", and "reserves the right to supplement, clarify, revise, or correct her response". (Doc. ## 74, at 5-45; 60-2, at 74-120.) These responses do not conform with Rule 34(b)(2)(C) and must be revised.   *See Mancia v. Mayflower Textile Servs. Co.,* 253 F.R.D. 354, 358 (D. Md. 2008) ("[B]oilerplate objections that a request for discovery is 'over[broad] and unduly burdensome, and not reasonably calculated to lead to the discovery of material admissible in evidence,' . . . persist despite a litany of decisions from courts, including this one, that such objections are improper unless based on particularized facts."). Despite engaging in multiple meet and confer conferences the parties have been unable to resolve the uncertainty about whether Plaintiff is withholding any relevant and responsive information on the basis of these broad objections.

---

[6]     The Court notes that while Defendants take issue with Plaintiff's assertion of general objections, Defendants' objections to Plaintiff's discovery employs a similar disfavored approach. *See Vidal v. Metro-N. Commuter R. Co.,* No. 3:12CV248 MPS, 2013 WL 1310504, at *2 (D. Conn. Mar. 28, 2013) (cautioning parties that continued failure to follow the Federal Rules of Civil Procedure with respect to making specific objections to discovery demands may result in the imposition of sanctions and/or payment of costs).

The Court accepts and holds Plaintiff to her representation that "[u]nless otherwise explicitly noted in her objections or responses, the Plaintiff is not withholding any documents or information".  (Doc. # 60-1, at 24.)  As such, the issue is deemed moot.

## III.   PLAINTIFF'S MOTION TO COMPEL (Doc. # 57)

Plaintiff moves to compel responses to her March 16, 2022, Interrogatories and Requests for Production; Electronically Stored Information ("ESI"); and production of a privilege log.  (Doc. ## 57, 63 (reply brief).)

### A.  ESI

Initially, Plaintiff sought an order compelling Defendants to run an ESI search using three searches proposed on August 2, 2022. The Joint Status report indicates the parties agree that they are still negotiating the ESI search terms and do not presently require Court intervention.  (Doc. # 83, at 5.)  Plaintiff's Motion to Compel ESI searches is denied on the current record.  The parties will submit a joint status report with an update on ESI discovery on or before December 14, 2022.

### B.  Responses to Interrogatories and Requests for Production

In the parties' Joint Status Report, Plaintiff reports that Interrogatories 1, 2, 5, 7, 8, 14, and 15 as to Defendant LJ Leasing, and Interrogatories 1, 2, 3, 4, 5, 6, 7, 8, 12, and 13 as to Defendant Veyo, and RFP Nos. 10 and 32 remain unresolved.  (Doc. # 83, at 6.)

#### 1.  Defendant L.J. Leasing Inc.

#### a.  Interrogatory Nos. 1, 2, 5, 7, 8, 14, 15 and Request for Production Nos. 10, 32

Plaintiff seeks an order compelling Defendants to answer or provide sufficient responses to Interrogatory Nos. 1, 2, 5, 7, 8, 14, and 15.  (Doc. # 57-1, at 16-27, Doc. # 83, at 6.)  Defendants respond that they provided sufficient responses and/or resolved several of these outstanding issues during the course of several meet and confer conferences.  (Doc. # 59, at 14-30; Doc. # 83, at 6.)

14

**INTERROGATORY NO. 1: Please identify each and every reason for the Company's decision to terminate Ms. Passenti's employment.**

**Defendant's Response:  Notwithstanding, without waiving and subject to the above objections, LJ Leasing responds as follows: Plaintiff was laid off as a result of corporate downsizing due to the onset of the COVID-19 pandemic.**

Plaintiff argues that "LJ Leasing failed to provide a meaningful response."  (Doc. # 57-1, at 17.)  She contends that this answer "says nothing about why Ms. Passenti herself was included in this lay off given that many other similarly situated employees were not terminated." (*Id.*). Nor does it explain "what factors went into the decision, whether it was deemed her position was unnecessary, or other information relevant to this interrogatory."  (Doc. # 63, at 6.)

LJ Leasing responds that it provided a response to Interrogatory No. 1 in its initial discovery response on May 16, 2022, and stands by its response.  (Doc. # 59, at 14.)

While Plaintiff may want a more robust response, the Court finds that the response is sufficiently responsive to the question.  Plaintiff's Motion to Compel a response to Interrogatory No. 1 is denied.

**INTERROGATORY NO. 2: Please identify each and every individual who was involved in any decision to terminate Ms. Passenti's employment relationship with the Company, including by providing information, input, recommendations, or making decisions related to this termination.  For each individual so identified, please state: the individual's legal name; the individual's job title at the time of the termination; the employer of this individual; and whether the individual is still employed by this Company or any other entity within the Company (including, but not limited to, at a different facility under the control of the Company).**

**Defendant's July 27, 2022 Supplemental Response: Notwithstanding, without waiving and subject to the above objections, LJ Leasing responds as follows: the following individuals were pertinent decision makers or had substantial impact into the decision to lay off the Plaintiff due to COVID-19:**

**David Gibson-Vice President of Operations, LJ Leasing, Inc.**
**Brandi Stadie-Senior Director, Contact Center Operations, LJ Leasing Inc.**
**Jacky Gibs-Market Director, LJ Leasing Inc.**
**Robert Camacho-Vice President of Operations, LJ Leasing Inc.**

Plaintiff argues that LJ Leasing has "improperly limited their answer to Interrogatory #2." (Doc. #57-1, at 18-19.)  She asserts that "Defendants have not defined how they interpret the words 'pertinent' or 'substantial impact,' and thus are clearly refusing to answer" the interrogatory.  (*Id.,* at 19.)  The Court agrees that Defendants' answer is not responsive to Plaintiff's questions in that it appears to unreasonably limit the question which seeks names of those "involved" to a narrower set of "decisionmakers".  To the extent that there were individuals consulted, spoken to, asked for an opinion, who gave an opinion, in connection with the decision to lay off Plaintiff, the identities of such individuals is discoverable.

Plaintiff's Motion to Compel a response to Interrogatory No. 2 is  granted.

**INTERROGATORY NO. 5: Please identify any and all employees who were not furloughed, laid off, or terminated from a period of March 1, 2020 through May 31, 2020, who were permitted to continue working by the Defendant despite concerns relating to the coronavirus pandemic or allege hardship, including for each instance: the name and position of the employee; the individual who allowed the decision to allow the employee to continue working; the essential functions of the employee; sex; disability status; and why the employee was allow to keep working.**

**Defendant's July 27, 2022 Supplemental Response:  Plaintiff was not terminated. Notwithstanding, without waiving, and subject to the above objections, LJ Leasing responds as follow: The following individuals were employed in the Plaintiff's Department in Connecticut, and were not laid off from the period of March 1, 2020 through May 31, 2020:**
**Yesenia Santiago-Lead Agent**
**Martin Colin-Public Transit Agent**
**Asia Dones-Public Transit Agent**
**Adrine Henry-Public Transit Agent**
**Naomi Marshell-Public Transit Agent**
**Bianca Rivera-Public Transit Agent**
**Tiffany Walker-Public Transit Agent**

The Parties do not dispute that during a meet and confer conference "Plaintiff proposed to narrow this request to cover only employees in Ms. Passenti's Department[.]"  (Doc. # 57, at 20; Doc. # 59, at 15.)  Plaintiff argues that "Defendants have seemingly only provided information about individuals who report *to* Ms. Passenti, and the response does not include any information

16

concerning the other similarly situated supervisors who (like Ms. Passenti) reported to Ms. Rodriguez, not any information concerning the employees who reported to these similarly situated supervisors under Ms. Rodriguez." (Doc. # 57, at 20.)

Defendant maintains that, "[i]n accordance with the parties' agreement, on July 27, 2022 LJ Leasing identified and provided the names and job titles of all employees in Plaintiff's Department, Public Transit, who were not furloughed, laid off, or terminated." (Doc. # 59, at 15.) Moreover, LJ Leasing repeats that "it is unclear" why Plaintiff raised this issue in her Motion to Compel when she "did not ask for the names and titles of *all* individuals who report to Ms. Rodriguez." (*Id.*)  Defendant adds that, "at the time of the Plaintiff's layoff, Ms. Rodriguez oversaw several departments, including Public Transit." (*Id.*)  Defendant maintains that it should not be required to make any further production.  The Court agrees.

On this record, Plaintiff's Motion to Compel a response to Interrogatory No. 5 is denied.

**INTERROGATORY NO. 7: Please identify any and all employees hired by the Company in Ms. Passenti's department or any related department (including, but not limited to, all employees hired into positions that reported to the existing or former first level supervisor above Ms. Passenti or the second level supervisor above Ms. Passenti, as well as employees who performed job duties similar to those performed by her department) from a period of 180 days before the date of Ms. Passenti's termination and the present.  For each such identified employee, include: the name and job title of the employee; date of hire; job duties of the employee; whether the employee s disabled; the employee's sex; the department and supervisor of the employee; and whether the employee is still employed, and if not, a description of the date and nature of the employee's end of employment.**

**Defendant's July 27, 2022 Supplemental Response:  Pursuant to LJ Leasing's offer during the Parties' good faith conferences to identify all individuals hired to replace Plaintiff, LJ Leasing response as follows:  Notwithstanding, without waiving, and subject to the above objection, LJ Leasing responds as follows:  No individual was hired to replace Ms. Passenti.**

Plaintiff reports that LJ Leasing "has refused to answer this interrogatory entirely." (Doc. # 57-1, at 21.)  She explains that "this interrogatory seeks information related to employees hired into Ms. Passenti's department (including people within the chain of command under Ms.

Rodriguez), *not* solely who was hired to replace Ms. Passenti." (*Id., at 22* (emphasis in original).) She "unilaterally proposed limiting this interrogatory further to a time frame of 60 days prior to Ms. Passenti's termination up to one year following Ms. Passenti's termination." (*Id.*) Finally, she argues the information is "highly relevant to determine whether the Defendant hired individuals into Ms. Passenti's department . . . both because this may call into question the assertion of a business need for laying Ms. Passenti off and because it may shed light on who actually replaced Ms. Passenti." (*Id.*)

LJ Leasing states that it is "simply untrue" that it refused to answer this interrogatory. (Doc. # 59, at 17.)  Defendant restates that "[n]o individual was *hired* to replace Ms. Passenti." (*Id.* (emphasis added).)  It provided "a list of individuals who *assumed* Plaintiff's job duties after she was laid off in response to Interrogatory No. 6.  None of these individuals were *hired* with the intention of replacing the Plaintiff in any capacity." (*Id,.* at n.10 (emphasis added).)  Plaintiff did not reply to Defendant's position in her reply brief.

Plaintiff's Motion to Compel a response to Interrogatory No. 7 is denied on the current record.

**INTERROGATORY NO. 8:  Please identify each and every employee from a period of January 1, 2017 through May 1 , 2020, who received or was placed on a performance improvement plan ("PIP"), including, for each such identified employee, identifying their name, job title, sex, disability status, the length of the PIP, and when they were removed from the PIP.**

**LJ Leasing refused to answer Interrogatory No . 8 (Doc. # 57-1 at 22)**

Plaintiff argues, among other things, that "[t]his information is particularly relevant as Ms. Passenti claims she was discriminated and retaliated against by being wrongfully placed on a baseless PIP." (Doc. # 57-1, at 23.)  She adds that "[i]dentifying other individuals in this applicable time period who received PIPs will allow a comparison as to the nature, structure, and reasons for

other employees' PIPs . . . ." (*Id.*)  Plaintiff proposed "narrowing this interrogatory to identify employees who received a PIP who were in Ms. Passenti's department (including under the chain of command of Ms. Rodriguez)." (*Id.*)

Defendant maintain that Interrogatory No. 8 "is not proportional to the needs of this case, nor is it reasonable calculated to lead to the discovery of admissible evidence. " (Doc. # 59, at 17.) It explained that this "Interrogatory seeks information on *all* employees across the entire company placed on performance improvement plans for any reason for a 3 ½-year period." (*Id.*)  "LJ Leasing operates in multiple states and employs over five hundred individuals." (*Id.*)  It maintains that no further response to this interrogatory should be required.  Defendant did not address Plaintiff's offer to narrow her request.

The Court agrees that Plaintiff's narrowed proposal seeking to identify employees who received a PIP who were in Ms. Passenti's department (including under the chain of command of Ms. Rodriguez) is relevant and proportional to the needs of the case.  The Motion to Compel Interrogatory 8 is granted and limited to the time period Ms. Passenti was employed at the company.

**INTERRROGATORY NO. 14: Please state whether the Company still has possession, custody, or control (including the ability to access, restore, or obtain from a server, back up tapes, or a third party) of all emails (including attachments) sent or received by all Company employees from April 8, 2018 to present, including, but not limited to, emails that were deleted by employees, or which were automatically deleted or expunged by any individual or system pursuant to retention protocols.  If some such emails are outside of the possession, custody, or control of the Company and/or are no longer accessible to the Company, please identify the date ranges that are inaccessible, describe what categories of emails (including specific employees, date ranges, or types of emails) the Company does have access to, describe what caused the email to no longer be in the possession, custody, or control of the Company), and describe when such mails ceased to be in the Company's possession, custody, and control.**

**Defendant's July 27, 2022 Supplemental Response: Notwithstanding, without waiving, and subject to the above objection, LJ Leasing responds as follows:  LJ Leasing,**

**Inc.'s compliance and Record Retention  Policy has been produced at VEYOCASE000220-000223.**

Plaintiff contends that LJ Leasing did not meaningfully answer the subject matter of Interrogatory No. 14.  (Doc. # 57-1, at 25.)

In response to this interrogatory, Defendant provided LJ Leasing, Inc.'s Compliance and Record Retention Policy.  (Doc. # 57-2, at 26;  (citing VEYOCASE000220-000223).)

Defendant states that it is still unclear what Plaintiff is seeking in this request.  (Doc. # 59, at 21.)  It understands this request to ask "Defendants to review *each and every ESI document* over a four year period, across a company located in a number of … states and with hundreds [of] employees, to determine whether each and every email exchanged during the period identified still exists without any limitation to the facts or allegations at issue in this case, and if any of those emails doesn't exist  for LJ Leasing to provide a narrative response as to why they no longer have access to those documents."  (*Id.*)  Defendant argues that the request is "entirely unreasonable and well beyond the bounds of proportionality required for a single-plaintiff case, especially as the parties have still not agreed to the terms of an ESI production and LJ Leasing has not claimed in this case that any emails are no longer available."  (*Id.*)

While Plaintiff maintains that she has sought to narrow this request, a point Defendant disagrees with, the Court agrees that as drafted the information sought is overbroad and not proportional to the needs of the case. Plaintiff's Motion to Compel a response to Interrogatory No. 14 is denied.

**INTERROGATORY NO. 15:  Please identify by name each individual who provided information contained within your answers to any of Plaintiff's interrogatories and/or who was otherwise involved in the preparation of any of your answers to Plaintiff's interrogatories.   Identify what information each such individual provided and what numbered interrogatory responses this information was included within or used to answer, in whole or in part.  For each such individual who is an employee or official of the Company, specify that individual's former Company affiliation, and position title.**

**Defendant's July 27, 2022 Supplemental Response:  Notwithstanding, without waiving, and subject to the above objections, LJ Leasing responds as follows:  LJ Leasing does not have a reasonable means to identify all individuals who provided information concerning these interrogatory responses as the responses are a culmination of the information known to LJ Leasing through a variety of sources, including review of relevant documents.**

Plaintiff asserts that LJ Leasing largely failed to answer Interrogatory No. 15.  (Doc. # 57-1, at 26).  She contends that "it is unclear the Defendant even made an attempt to provide a response to this interrogatory."  (*Id.*)

Defendant objects maintaining that the interrogatory "is overly broad and unduly burdensome" as it seeks "detailed information concerning the individuals who may have contributed to the information provided in these responses as the responses are provided on behalf of a corporation, not an individual."  (Doc. # 59, at 22.)  It further asserts a relevance objection.  (*Id.*)  Finally, LJ Leasing states it "does not have a reasonable means to identify all individuals who provide information concerning these interrogatory responses as the responses are a culmination of the information known to LJ Leasing through a variety of sources, including review of relevant information.  (*Id.,* at 26-27.)

"In certain circumstances where a party makes some showing that a producing party's production has been incomplete, a court may order discovery designed to test the sufficiency of that party's discovery efforts in order to capture additional relevant material."  *Freedman*, 2014 WL 4547039, at \*2 (citing *Orillaneda v. French Culinary Inst.*, No. 07-cv-3206, 2011 WL 4375365, at \*6-7 (S.D.N.Y. Sept. 19, 2011)).  "Where, as here, a party seeks discovery on discovery, that party must provide an adequate factual basis to justify the discovery, and the Court must closely scrutinize the request in light of the danger of extending the already costly and time-consuming discovery process *ad infinitum.*"  *Kaye v. N.Y. City Health & Hosps. Comm'n*, No. 18-

21

cv-12138 (JPO) (JLC), 2020 WL 283702, at *1 (S.D.N.Y. Jan. 21, 2020) (internal quotation marks

omitted) (quoting *Winfield v. City of N.Y.*, No. 15-cv-5326 (LTS) (KHP), 2018 WL 840085, at *3

(S.D.N.Y. Feb. 12, 2018); citing *Freedman*, 2014 WL 4547039, at *2); *accord Grant v.*

*Witherspoon*, No. 19-cv-2460 (PGG) (BCM), 2019 WL 7067088, at *1 (S.D.N.Y. Dec. 23, 2019).

The record before the Court does not provide an "adequate factual basis" for requiring

information responsive to Interrogatory No. 15. Defendant's objection is sustained.

Plaintiff's Motion to Compel a response to Interrogatory No. 15 is denied.

**REQUEST FOR PRODUCTION NO. 10: All documents relating to the job responsibilities, essential functions, or performance expectations of all positions and employees during the period of time from April 8, 2018 to present (including, but not limited to, Ms. Passenti and her positions(s)) which had the same or similar job title or job responsibilities as those of Ms. Passenti (during any period of her employment) or which were in the Company's supervisory chain of command (above or below Ms. Passenti), including, but no limited to, job descriptions, performance requirements and goals.**

**Defendant's July 27, 2022 Supplemental Response:  In addition to the General Objections, Defendant objects to this request on the basis that it is duplicative in part of Requests Nos. 8 and 9 and therefore is objectionable for the same reasons set forth in response to those requests.  In addition, it is oppressive to issue multiple discovery requests repeatedly seeking the same categories of documents.**

**Defendant further objects on the basis that it seeks copies of "job responsibilities, essential functions, or performance expectations" of all individuals in LJ leasing, Inc's "supervisory chain of command," including those below Plaintiff.  This request necessarily encompasses information that neither is relevant to the subject matter involved in this action nor proportional to the needs of this case.**

**Defendant further objects to the request to the extent that the request purports to require production of confidential documents that may be protected by the attorney-client privilege and/or work product doctrine.**

With regard to Request for Production No. 10, LJ Leasing represents that during the

parties' meet and confer conferences, "Plaintiff stated she would not be pursuing further responses

to Requests for Production from LJ Leasing: 10. . . ."  (Doc. # 59, at 29.)  Plaintiff did not reply to

Defendant's representation in her reply brief.  As such, Plaintiff has not proffered a reasonable

explanation for making such a broad request.  Nor has she explained how this request is

proportional to this case. Nevertheless, she maintains in the Joint Status Report that "there are a number of job descriptions for identified comparators which have not yet been produced." (Doc. # 83, at 6.) To the extent that is the case, Defendants shall produce the job for identified comparators within fourteen days of this ruling. In all other regards the motion to compel RFP 10 is denied.

**REQUEST FOR PRODUCTION NO. 32: All documents relating to the hiring of any individual by the Company during the time period from April 8, 2020 to present into a same or similar position to any position Ms. Passenti held during her employment, including, but not limited to, public transit supervisor.**

**Defendant's July 27, 2022 Supplemental Response: In addition to the General Objections, Defendant objects to this request on the basis that it is overly broad, unduly burdensome and not limited to a reasonable time and scope. The only individual who would have any connection to the claims and issues in dispute would be an individual hired specifically to replace Plaintiff after she was laid off, not each and every individual hired "into a same or similar position" to any position Plaintiff may have held at any point in the court of her employment. This request therefore necessarily encompasses information that neither is relevant to the subject matter involved in this action nor proportional to the needs of this case.**

**Defendant further objects to the request to the extent that the request purports to require production of confidential documents that may be protected by the attorney-client privilege and/or work product doctrine.**

With regard to Request for Production No. 32, Plaintiff argues that it "to the extent the Defendants claim Ms. Passenti was not replaced or her duties were picked up by other coworkers, it is important to receive documents listing Ms. Passenti's job responsibilities and functions" and important "to the point of comparator information (including employees in the same chain of command as Ms. Passenti whose job titles were different but duties were functionally similar.). (Doc. # 57-1, at 34.) Clearly, this request is not narrowly tailored to request a "listing of Ms. Passenti's job responsibilities and functions." And LJ Leasing maintains that "[n]o individual was *hired* to replace Ms. Passenti." (Doc. # 59, at 17 (emphasis added).) Defendant "stands by its objection." (Doc. # 59, at 29.) Plaintiff did not respond to Defendant's position in her reply brief,

but in the Joint Status Report states that this request is "related to hiring information for the Plaintiff's comparators." (Doc. # 83, at 6.) The request as drafted is overbroad and does not seek hiring information for Plaintiff's comparators. As such, Plaintiff's Motion to Compel documents responsive to Request for Production No. 32 is denied.

### 2. Defendant Veyo, LLC

Plaintiff states that the Interrogatory Nos. 1-8, 12 and 13 and Requests for Production 10 and 32 remain outstanding as to Defendant Veyo, LLC. (Doc. # 83, at 6.) Plaintiff contends that Veyo has not provided a valid justification for its blanket refusal to answer several interrogatories. (Doc. # 63, at 9-10.) She argues that Veyo's contention that it is not Plaintiff's "formal employer" is baseless. (*Id.*) She claims that Veyo interpreted the word "Company to mean the entity which employed the Plaintiff" which is LJ Leasing. (*Id.,* at 10.) Plaintiff argues that Veyo is creating "artificial defenses to improperly avoid answering the Plaintiff's interrogatories and document requests." (*Id.*)

Defendant Veyo, LLC states it "has made clear throughout this litigation that it did not employ the Plaintiff at any time and is not a proper Defendant in this action." (Doc. # 59, at 24.) Veyo denies the allegations in the Complaint at paragraph 2, including that it employed Plaintiff.[7] (Doc. # 25, ¶ 2.) Moreover, Veyo reiterated throughout the course of the discovery process that "it did not employ the Plaintiff and therefore has no documents responsive to Plaintiff's" discovery. (Doc. # 59, at 31.) Veyo argues that Plaintiff "has failed to establish why each of these requests for production is reasonably calculated to lead to the discovery of admissible evidence

---

[7]     Veyo also denies that it (1) "employed 50 or more employees" (Doc. # 25, ¶105 (Answ. Count One); (2) "employed three or more persons" ¶129 (Answ. Count Three);¶140 (Answ. Count Four)); ¶ 158 (Answ. Count Six); and (3) "employed 'fifteen or more employees'" ¶149 (Answ. Count Five); ¶199 (Answ. Count Nine).

and reasonably proportional to the needs of the case."  (*Id.*)  Simply put, Veyo maintains that

"Plaintiff has produced no evidence that *any* Veyo employees were involved in discussion relating

to the Plaintiff's lay off *because no* Veyo employees were involved in decision to lay her off, nor

has Plaintiff produced any evidence that because Plaintiff was employed at a facility that Veyo

must possess "some volume" of responsive documents."  (*Id.,* (emphasis in original).)  Veyo

contends that the Requests for Production "are based on improper assumptions," "speculation and

conjecture" and are thus improper.  (*Id.*, at 33-32 (citing *In re PE Corp. Sec Litig.,* 221 F.R.D. 20,

23 (D. Conn. 2003) ("[D]iscovery requests that are based on pure speculation and conjecture are

not permissible.") (citation and internal quotation marks omitted)).   Nevertheless, Veyo

represented on multiple occasions during various meet and confer conferences with Plaintiff's

counsel that "even though [it] was not [Plaintiff's] employer and had no legal obligation to search

for these documents, [it] would still search for any documents it had which were responsive to

Plaintiff's requests and that such documents would be produced notwithstanding Veyo's

objections."  (*Id,*. at 32.)

Plaintiff contends that despite Veyo's position that key decisionmakers were not employed

by Veyo, there is contrary evidence demonstrating:

- David Gibson's LinkedIn business page identifies him as Vice President Operations at Veyo.  (Doc. # 63, at 9 (citing Panigrahi Aff., Ex. 9).);
- Brandie Stadie's LinkedIn business page identifies herself as Senior Director of Contact Center Operations at Veyo.  (*Id.* (citing Panigrahi Aff., Ex. 10);
- Robert Camacho's LinkedIn business page identifies him as having been Executive Vice President of Operations at Veyo (*Id.* (citing Panigrahi Aff., Ex. 11); and
- Both Mr. Gibson and Ms. Stadie operate email accounts with a @veyo domain name.

Finally, Plaintiff also contends that Defendants' ESI materials show they "turned off or

otherwise failed to show headers, footers and background graphics" which she believes is hiding

Veyo's company logo "under each individual's signature block and title."  (*Id,*. at 9.)  Defendants

assert that they were unaware that there was an issue with documents produced that were converted from email to PDF and only heard about it for the *first time* in Plaintiff's Motion to Compel despite multiple meet and confer conferences.  (Doc. # 59, at 13.)  The Court declines to insert itself in an issue that can be readily corrected.

The parties disagree on the facts supporting each other's positions and were unable to reach an understanding during the October in-person meet and confer or propose a solution.

A ruling on Plaintiff's Motion to Compel Discovery responses from Defendant Veyo is denied without prejudice to renewal after the parties meet and confer to decide how to resolve this issue through targeted discovery and/or motion practice.[8]  Following the meet and confer, the parties will submit a Joint Status Report addressing this issue and submit a proposal for resolving it  on or before December 14, 2022.

## IV.     MOTIONS TO MODIFY SCHEDULING ORDER (Doc. ## 61, 64)

Plaintiff's Motion for Extension of Time Until December 29, 2022 to Complete Discovery (Doc. # 61) and Defendants' Motion for Partial Modification of Scheduling Order (Doc. # 64) are

---

[8]     The parties are asked to consider the following options and provide a plan to resolve this issue in their Joint Status Report.

- Does Defendant Veyo intend to file a Summary Judgment motion seeking dismissal of the claims against it?
- Can the Court resolve this factual disagreement through motion practice?
- Can the parties engage in targeted discovery to resolve the issue?  Depose a human resources representative?  Provide an affidavit?
- What facts would assist the Plaintiff in moving on from this disagreement?
- Did Veyo search for responsive documents?
- If yes, what was produced?
- If not, when?
- Can Defendant provide a response regarding the employment affiliations of Gibson, Stadie and Camacho?

denied as moot in light of the passage of time.  Both motions were filed on August 29, 2022, before a ruling on the pending Motions to Compel.  A Case Management Conference will be held on December 19, 2022 to set a schedule.  The parties will meet and confer in advance of the conference and file a joint proposed scheduling order including a schedule for taking depositions on or before December 14, 2022.  Counsel should be prepared to provide their schedules as well as witness availability for scheduling depositions during the meet and confer and court conferences.  In the event the parties cannot agree they will propose alternative schedules with an explanation.  The Court anticipates entering an updated schedule during the conference.

## V.      MOTION FOR PROTECTIVE ORDER (Doc. # 78)

Defendants' Motion for Protective Order regarding Plaintiff's Notice of Deposition of LJ Leasing, Inc.'s corporate representative on October 6, 2022 is denied as moot in light of the passage of time.  (Doc. # 78.) Defendants' concern that "a number of the deposition topics Plaintiff proposes are duplicative of Interrogatories which LJ Leasing has objected to and are the subject of a Motion to Compel . . ." is now addressed by this ruling. (Doc. # 84, at 1.)  Plaintiff is permitted to schedule depositions of fact and 30(b)(6) witnesses in whatever order she chooses. However, Plaintiff is cautioned that the Court is unlikely to permit a follow-up deposition should information become available *after* fact witness depositions, and production of ESI discovery, and responses to outstanding interrogatories and requests for production as a result of the Court's ruling herein. *See* Fed. R. Civ. P. 26(e)(1)(A).

The parties are encouraged to work cooperatively to set dates that are convenient to the witnesses and counsel.  **Should any discovery issues arise, the parties shall request a joint telephonic status conference prior to filing any discovery motions.**

## VI.    CONCLUSION

For the reasons stated, Defendants' Motion to Compel is **granted in part and denied in part**.  **(Doc. # 56)** and Plaintiff's Motion to Compel is **granted in part and denied in part.  (Doc. # 57.)**

Plaintiff's Motion for Extension of Time Until December 29, 2022 to Complete Discovery **(Doc. # 61)** and Defendants' Motion for Partial Modification of Scheduling Order **(Doc. # 64)** are **denied as moot** in light of the passage of time.  A Case Management Conference will be held on December 19, 2022, to set a schedule.  The parties will meet and confer in advance of the conference and file a joint proposed scheduling order including a schedule for taking depositions on or before December 14, 2022.

Defendants' Motion for Protective Order is **denied as moot** in light of the passage of time. **(Doc. # 78.)**

The Court reserves on the issue of attorney's fees and costs incurred for filing these motions until after the close of discovery and a ruling on dispositive motion(s).

This is not a recommended ruling.  This is a discovery ruling and order which is reviewable pursuant to the "clearly erroneous" statutory standard of review. 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); and. Rules 72.1(C)(2), 72.2 of the Local Rules for United States Magistrate Judges.  As such, it is an order of the Court unless reversed or modified by the district judge upon motion timely made.

*/s/Maria E. Garcia, U.S.M.J.*
Hon. Maria E. Garcia
United States Magistrate Judge